IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

IN THE MATTER OF THE SEARCH OF    )    Case No. 6:25cr271
AN APPLE IPHONE WITH CALLER NUMBER )
956-373-8326                       )

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Special Agent Kimbrell C. Dodder, Jr., being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of an iPhone which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am an investigative or law enforcement officer of the United States within the meaning of 21 U.S.C. § 878. I have been a DEA Special Agent since October 2015. I received 19 weeks of training in narcotics investigations and related legal matters at the DEA Training Academy in Quantico, Virginia. Following graduation from the DEA Academy, I have been assigned to the offices in Jackson, Mississippi, Atlanta, Georgia, and Greenville, South Carolina. Prior to my employment as a DEA Special Agent, I was employed as a narcotics agent by the Mississippi Bureau of Narcotics for approximately eight years.

3. I have written and submitted to courts numerous affidavits in support of search warrants, pen registers, Title-III wire intercepts, and electronic tracking device (ETD) warrants. I

1

have served as the lead case agent in numerous wiretap investigations. I am familiar with the terminology and distribution methods used by drug traffickers, as well as the methods of packaging, transporting, and ingesting numerous types of controlled substances. I have received training, both formal and informal, in the investigation of violations of controlled substance offenses, including several schools regarding general narcotics investigation. I have participated in the investigation, arrest, and prosecution of numerous drug traffickers. During my law enforcement career, I have participated in investigations of narcotics trafficking, money laundering, complex conspiracies, and among other things, have conducted or participated in surveillances, the execution of search warrants, and debriefings of informants.

4.      Through my training, education, and experience, I have become familiar with the manner in which narcotics traffickers and money launderers conduct their operations, including but not limited to, their methods of importing and distributing controlled substances, their use of cellular telephones (including using multiple phones at once to communicate with different members of a drug organization, and the frequent use of new/replacement phones), their use of counter surveillance techniques, and their use of numerical codes and coded and/or cryptic language, words, and references to conduct their transactions. Additionally, while involved in narcotics trafficking investigations, I have communicated with other federal, state and local law enforcement personnel who specialize or have expertise in this area.

5.      As part of the aforementioned criminal investigations, I have training and experience dealing with electronic evidence and have prepared multiple search warrant affidavits supporting warrants for information maintained by telephone and internet service providers, authorizing forensic searches of cellular telephones, computers, and other electronic devices. I know that drug dealers often keep photographs, messages, and other records of their drug

distribution efforts on cellular telephones, computers, and electronic devices. And I know through this investigation, in particular, that the target subject, Santiago CANTU, has used a cellular telephone to further his drug trafficking activities.

6. This affidavit is intended to establish that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The electronic device to be searched is:

   a. **TARGET DEVICE:** Apple iPhone cellphone with caller number 956-373-8326, located in the vehicle that CANTU was driving during his arrest and contained in DEA Evidence Bag S000574869.

8. This device will be hereinafter referred to as the "**TARGET DEVICE.**" The **TARGET DEVICE** is in secure storage with the DEA in the District of South Carolina.

9. The applied-for warrant would authorize the forensic examination of the **TARGET DEVICE** for the purpose of identifying the electronically stored data particularly described in Attachment B.

## BACKGROUND INVESTIGATION

9. In September 2021, Tonny FREEMAN ("FREEMAN") was intercepted over wire communications discussing kilogram quantities of cocaine during a DEA Atlanta investigation. As part of DEA Atlanta's investigation, law enforcement seized approximately 20 kilograms of cocaine from a drug courier in the Atlanta area who was intercepted discussing drug transactions with FREEMAN on multiple occasions. DEA Greenville then began investigating FREEMAN and confirmed that FREEMAN was distributing cocaine and heroin in the District of South Carolina. Law enforcement used a multi-faceted approach to develop evidence of FREEMAN's drug

3

distribution operation. These methods included, but were not limited to, physical surveillance, interviews with sources of information, and the employment of a confidential source. Additionally, law enforcement obtained authorization and initiated the use of electronic surveillance tools such as geo-location data and cell-site simulators.

10. On April 5, 2022, the Honorable Henry M. Herlong, Jr., Senior United States District Judge for the District of South Carolina, signed an order authorizing agents to begin intercepting wire communications over 470-573-4665 (TT#1), utilized by FREEMAN. During the intercepts occurring over TT#1, agents intercepted Freddy Leonel REYES-MARTINEZ, utilizing 504-516-4362 (TT#16), during which REYES-MARTINEZ would discuss being able to supply cocaine to FREEMAN.

11. Subsequently, on May 4, 2022, Judge Herlong signed an order authorizing agents to continue intercepting wire communications over TT#1 and the initial interception of wire and electronic communications occurring over TT#16.

12. During the interceptions occurring over TT#16, agents identified the **TARGET DEVICE** as being used by an eighteen-wheeler driver, later identified as Santiago CANTU, who was transporting cocaine to REYES-MARTINEZ.

## PROBABLE CAUSE

13. On May 8, 2022, agents intercepted a conversation between MARTINEZ, utilizing TT#16, and CANTU, utilizing **TARGET DEVICE**. A relevant portion of the went as follows:

> MARTINEZ: "Good evening."
>
> CANTU: "Listen, I'm calling on behalf of Licenciado. Uh, I don't know if, what time can I swing by there tomorrow?"
>
> MARTINEZ: "Well, you tell me what time. The earlier the better."

> CANTU: "Because I think I'd be around there around 1:00 in the afternoon.
>
> MARTINEZ: "Oh, okay, well, that's fine. Just call me."
>
> CANTU: "But, where exactly will it be? Is it, is it over here, you know?"
>
> MARTINEZ: "What?"
>
> CANTU: "I mean, where, where exactly are you?"
>
> MARTINEZ: "Well, I sent you the address. It's by –"
>
> CANTU: "Oh, you already sent it to me? You sent it to me?"
>
> MARTINEZ: "No, I sent it to the old man down there, to Licenciado."
>
> CANTU: "Oh, okay, because they haven't sent me anything, but is it down here by, what's the exit? Over here by Six Flags or what?"
>
> MARTINEZ: "Yes, right there."

14. Based on my training, experience, and the investigation to date, I believe CANTU told MARTINEZ that a drug supplier told CANTU to contact MARTINEZ ("calling on behalf of Licenciado"). CANTU said he could deliver the drugs on May 9, 2022 at a specific time ("what time can I swing by there tomorrow?"). MARTINEZ confirmed he was ok with the meeting time ("okay, well, that's fine"). CANTU then asked for the meeting location with MARTINEZ ("Over here by Six Flags or what?") and MARTINEZ confirmed the location ("Yes, right there.")

15. On May 9, 2022, at approximately 12:06 PM, agents intercepted a series of text messages between MARTINEZ, utilizing TT#16, and CANTU, utilizing **TARGET DEVICE**. The text conversation went as follows:

> MARTINEZ: "Look, there's a huge gas station on exit 41. Can you go there instead? They add diesel there to the other trucks like the one you have."
>
> CANTU: "All set."

5

> CANTU: "Exit 41 off of 20, correct?"
>
> MARTINEZ: "Off 20."
>
> CANTU: "Ok."

16. Based on my training, experience, and the investigation to date, I believe MARTINEZ told CANTU, who was driving an eighteen-wheeler, where to meet for the drug transaction, and CANTU confirmed the meeting location.

17. At approximately 12:46 PM, agents intercepted a conversation between MARTINEZ, utilizing TT#16, and UM181, utilizing 628-240-9782. A relevant portion of the call went as follows:

> MARTINEZ: "Do a small errand, it's around here."
>
> UM181: "I'm just waiting for them to give me the truck, then I head out there."
>
> MARTINEZ: "The guy said he was going to be here at 1:30."
>
> UM181: "I will be. I just have to pay for this."
>
> MARTINEZ: "Okay."
>
> UM181: "Should I go alone?"
>
> MARTINEZ: "Yes, go alone."
>
> UM181: "Okay."

18. Based on my training, experience, and the investigation to date, I believe MARTINEZ asked UM181 if he would pick up drugs ("do a small errand") and told UM181 when the drugs would be ready for pickup ("be here at 1:30"). UM181 confirmed he would pick up the drugs ("Okay.")

19. At approximately 1:00 PM, Atlanta DEA TFO Christopher Richards and TFO Patrick Tenety observed an eighteen-wheeler, bearing Texas tractor license plate number 544471

6

and Texas trailer license plate number 152C924, parked at a gas station off of Exit 41 in Lithia Springs, Georgia.

20. At approximately 1:12 PM, agents began intercepting a series of text messages between MARTINEZ, utilizing TT#16, and CANTU, utilizing **TARGET DEVICE**. The text conversation went as follows:

> CANTU: "I'm here."
>
> MARTINEZ: "Ok."
>
> MARTINEZ: "Give me 15."
>
> MARTINEZ: "Minutes."
>
> CANTU: "Ok."

21. Based on my training, experience, and investigation to date, I believe CANTU told MARTINEZ he had arrived at the meeting location ("I'm here"). MARTINEZ said someone would meet him in fifteen minutes ("Give me 15.")

22. At approximately 1:27 PM, agents intercepted a conversation between MARTINEZ, utilizing TT#16, and UM181, utilizing 628-240-9782. A relevant portion of the call went as follows:

> UM181: "I'm almost arriving."
>
> MARTINEZ: "All right, it's nearby. At the gas station on Exit 41, the truck will be there, it's going to be a little bit."
>
> UM181: "I'm getting there."
>
> MARTINEZ: "Come here and take the money because you're going to give him the money."
>
> UM181: "Shit! I'm on Hickory Street."

7

MARTINEZ: "All right."

23. At approximately 2:00 PM, agents observed the eighteen-wheeler park on the shoulder of an on-ramp for I-20 eastbound.

24. At approximately 2:11 PM, agents intercepted a conversation between MARTINEZ, utilizing TT#16, and UM181, utilizing 628-240-9782. A relevant portion of the call went as follows:

> UM181: "The guy said he told me he was going to enter the ramp and that there was a trailer there and for me to go there."
>
> MARTINEZ: "No, but call him again. He had, he has to be there."

25. At approximately 2:33 PM, agents intercepted a conversation between MARTINEZ, utilizing TT#16, and CANTU, utilizing **TARGET DEVICE**. A relevant portion of the call went as follows:

> MARTINEZ: "Hello Licenciado. How are we doing?"
>
> CANTU: "Fine, but I'm waiting for that man who got stuck in traffic and hasn't arrived yet."
>
> MARTINEZ: "Shit, man."
>
> CANTU: "And I'm here beside the ramp because over there I was, I had been there too long and figured I move over here, but this man doesn't –"

26. At approximately 2:45 PM, TFO Daniel Garsh observed a gray 2021 Chevrolet Silverado displaying California license plate number 05496L3 pull up and park next to the eighteen-wheeler. TFO Garsh observed the truck driver take a black bag out of the cab of the truck and hand the bag to the occupants of the Silverado. The Silverado and the eighteen-wheeler then drove off onto I-20 eastbound.

27. Based on intercepted phone calls between MARTINEZ, CANTU, and UM181, and the surveillance operation on May 9, 2022, I believe MARTINEZ coordinated with UM181 to pick up drugs from the eighteen-wheeler that CANTU was operating. UM181 then met CANTU and received the drugs, which were then transported to MARTINEZ's residence.

28. On May 14, 2022, agents intercepted a conversation between MARTINEZ and a Mexican drug supplier ("UM4"), utilizing a phone number with Mexico +52 country code. During the conversation, UM4 confirmed that MARTINEZ had three kilograms of cocaine that had arrived and would be receiving an additional three kilograms of cocaine on the following day.

29. On May 31, 2022, agents conducted a federal search warrant at MARTINEZ's residence and seized approximately 12 kilograms of cocaine.

30. On June 2, 2022, the Coweta County Sheriff's Office in Georgia, conducted a probable cause traffic stop of the eighteen-wheeler and trailer that CANTU was driving on May 9, 2022. During the traffic stop, CANTU was identified as the driver and sole occupant of the vehicle. During the traffic stop, your affiant called the **TARGET DEVICE**, which rang inside the cab of the eighteen-wheeler.

31. On July 20, 2022, a federal grand jury in the District of South Carolina returned a sealed indictment charging CANTU with violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846; and an arrest warrant pursuant to this indictment was subsequently issued.

32. On August 2, 2022, CANTU was arrested following a traffic stop of the same eighteen-wheeler he was driving on May 9, 2022. During the traffic stop and arrest, Officers discovered the **TARGET DEVICE**. CANTU and the **TARGET DEVICE** were transported to a jail in Kleberg County, Texas. The **TARGET DEVICE** was placed into CANTU's personal property.

33. On August 3, 2022, DEA agents in Corpus Christi, Texas, retrieved the device from CANTU's personal property. On August 4, 2022, your affiant called the **TARGET DEVICE** and the phone that DEA Corpus Christi retrieved from CANTU's personal property rang – thus confirming that the phone currently in DEA custody is the **TARGET DEVICE**.

### STATUS OF THE TARGET DEVICES

28. The **TARGET DEVICE** has been in DEA's custody since August 3, 2022, and has been in the custody of DEA Greenville since August 8, 2022. In my training and experience, I know the **TARGET DEVICE** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **TARGET DEVICE** first came into the DEA's possession.

### DEVICE CAPABILITIES

29. Based on my training, experience, and research, I know that the **TARGET DEVICE** has capabilities that allows it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, device for sending and receiving emails and SMS messages, as well as an internet browser which allows a user to post text, pictures, and videos on various social media sites.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

31. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence

of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICE** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

32. *Nature of examination.* Based on the foregoing, and consistent with Federal Rule of Criminal Procedure 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICE** consistent with the warrant and corresponding documents submitted in support thereof. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

33. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises.

## CONCLUSION

34. I respectfully submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET DEVICE** described in Attachment A to seek the items described in Attachment B for evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.

This affidavit has been reviewed by AUSA Justin Holloway.

Kimbrell C. Dodder, Jr.
Special Agent, DEA

Subscribed and sworn before me on August /5, 2022, in Greenville, South Carolina.

The Honorable Kevin F. McDonald
United States Magistrate Judge
District of South Carolina

## ATTACHMENT A

The property to be searched is:

a. **TARGET DEVICE:** an Apple iPhone cellphone with caller number 956-373-8326 that was located in the vehicle that CANTU was driving during his arrest and contained in DEA Evidence Bag S000574869.

The **TARGET DEVICE** is currently located in secure storage with the DEA in the District of South Carolina. This warrant authorizes the forensic examination of the **TARGET DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

All information and objects that constitute fruits, contraband, evidence, and instrumentalities of violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute and the distribution of controlled substances) and 21 U.S.C. § 846 (conspiracy to possess with intent to distribute and to distribute controlled substances) involving MARTINEZ, CANTU, and/or other co-conspirators in the subject offenses, known and unknown, including the following:

a. Records of any type of communication with CANTU and/or any other co-conspirator involved with criminal behavior. These include but are not limited to phone calls, voice messages, text messages, emails, and secure and encrypted messages conducted through social media or mobile applications to include text, voice, and video messages.

b. Business and bank account information related to CANTU or any of his co-conspirators. These records include but are not limited to electronic documents, bank statements, money transfers, financial and business applications, ledgers, photographs, videos, and government records.

c. Photographs and videos (and the metadata associated with photos or videos, denoting information such as the date, time, and location where a certain electronic file was created) of items associated with CANTU, his co-conspirators, and drug distribution.

d. Electronic GPS data denoting locations historically visited by the **TARGET DEVICES**.

e. Any and all records of property, both real and personal, owned or possessed by CANTU.

14

f. Any records of the **TARGET DEVICE** account information and other financial records associated with the payment of fees with respect to the **TARGET DEVICE**.

g. Internet browsing history and all other information associated with the **TARGET DEVICE** access and navigation of the internet.

h. Evidence of user attribution showing others who may have used or owned the **TARGET DEVICE** during the time the things or items described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.